**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| STEPHANIE LAKINS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:19-CV-519-JD-JPK |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

**FINDINGS, REPORT, AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Stephanie Lakins

on July 8, 2019, and Plaintiff's Brief in Support of Her Request for Review and Remand of the

Commissioner of Social Security's Final Decision [DE 16], filed on November 26, 2019. Plaintiff

requests that the August 9, 2018 decision of the Administrative Law Judge denying her claim for

disability insurance benefits be reversed and remanded for further proceedings. The Commissioner

filed a response, and Plaintiff filed a reply.

On October 21, 2019, District Court Chief Judge Jon E. DeGuilio entered an Order [DE

13] referring this matter to the undersigned Magistrate Judge for a report and recommendation on

the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned

Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C.

§ 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse

the decision of the Commissioner of the Social Security Administration and remand for further

proceedings consistent with this Report.

**PROCEDURAL BACKGROUND**

On May 24, 2016,[1] Plaintiff filed an application for disability insurance benefits, alleging disability as of February 22, 2016. The claim was denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on April 12, 2018. On August 9, 2018, the ALJ issued an unfavorable decision, making the following findings:[2]

> 1.      The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.
>
> 2.      The claimant has not engaged in substantial gainful activity since February 22, 2016, the alleged onset date.
>
> 3.      The claimant has the following severe impairments: scoliosis and osteopenia of the lumbar spine, insulin dependent diabetes mellitus, asthma, obesity, attention deficit disorder, depression, bipolar disorder, and anxiety disorder.
>
> 4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5.      After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to two hours of standing and walking in an 8-hour workday. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot have concentrated exposure to hazardous conditions or to fumes, odors, dusts, gases, and poor ventilation. She is limited to simple tasks.
>
> 6.      The claimant is unable to perform any past relevant work.
>
> 7.      The claimant was born [in 1975] and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8.      The claimant has at least a high school education and is able to communicate in English.

---

[1] The ALJ cited this date as May 18, 2016, and Plaintiff herself cited this date as December 29, 2015. (AR 15; Pl.'s Br. 1, ECF No. 16). However, a review of the record reveals that the correct date is May 24, 2016. (AR 175-76).

[2] These are direct quotes of each of the ALJ's bolded findings made at various points throughout the decision. Internal citations to the Code of Federal Regulations are omitted.

2

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.    The claimant has not been under a disability, as defined in the Social Security Act, from February 22, 2016, through the date of this decision.

(AR 17-26[3]).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the Agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th

---

[3] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which is found on the lower right corner of the page, and not the page number assigned by the Court's CM/ECF system.

Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

4

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to properly consider Plaintiff's physical impairments; (2) failing to properly consider Plaintiff's mental impairments; (3) improperly disregarding the opinion of Plaintiff's treating physician; and (4) improperly assessing statements made by Plaintiff and her mother.

### A. Consideration of Plaintiff's Physical Impairments

Plaintiff argues that the ALJ erred by (1) incorrectly concluding that Plaintiff had severe physical impairments she did not have and neglecting to consider additional physical impairments she did have; (2) failing to consider an applicable listing; and (3) improperly crafting Plaintiff's RFC.

*1. Plaintiff's Physical Impairments*

Plaintiff explains that the ALJ concluded that Plaintiff suffered from the severe impairments of, *inter alia*, insulin dependent diabetes mellitus and asthma, yet there are no medical records reflecting that Plaintiff has either of these conditions. (Pl.'s Br. 3-4, ECF No. 16). Further, Plaintiff states that, at step two, the ALJ neglected to consider whether Plaintiff's chronic pain syndrome, headaches, classic migraines, and degenerative disease of the cervical spine and

shoulder were medically determinable impairments which, either individually or in combination, warranted a severity finding. *Id.* at 5.

In response, the Commissioner explains that, even if the Court finds some legal or factual error in the ALJ's step two analysis, such error would not warrant remand unless it was harmful. (Def.'s Mem. 5-6, ECF No. 17). The Commissioner asserts that the ALJ properly evaluated Plaintiff's impairments, singly and in combination, and found a number of impairments to be severe under the regulations. *Id.* at 6. Accordingly, the Commissioner contends that the ALJ satisfied the requirements at step two. *Id.*

The Court can find no indication in the medical records that Plaintiff has insulin dependent diabetes mellitus. In fact, there are several records signifying that Plaintiff affirmatively does *not* have diabetes. (*See* AR 305, 307, 309, 313, 315, 317, 319, 401, 402, 407, 409, 411, 413, 415, 417, 419).[4] The Commissioner notes records indicating that Plaintiff complained of wheezing, cough, and shortness of breath, that her physician ordered tests for chronic obstructive pulmonary disease and prescribed an inhaler, and that Plaintiff herself testified that she has breathing problems and uses an inhaler at times. (Def.'s Mem. 5, ECF No. 17 (citing AR 54, 354-55, 357, 402)). Yet, again, the Court can find no indication in the record that Plaintiff was ever diagnosed with asthma, and there are several records signifying that Plaintiff affirmatively does not have this condition. (*See* AR 305, 307, 309, 313, 315, 317, 319, 401, 407, 411, 413, 415, 417, 419).

"Deciding whether impairments are severe at step two is a threshold issue only; an error at step two is only harmful if the ALJ stops his analysis at that step and does not consider the claimant's impairments at future steps." *Jacoby v. Colvin*, 2016 WL 6603259, at *3 (S.D. Ind. Oct.

---

[4] The Commissioner notes that the medical records reflect an order for a diabetes mellitus test. (Def.'s Mem. 5, ECF No. 17 (citing AR 357)). It appears that such a test was ordered multiple times throughout the course of several years, but there is no record indicating Plaintiff ever received a positive diagnosis, nor is there any indication in the record that Plaintiff alleged that she had diabetes. (*See* AR 266, 348, 357).

11, 2016) (citing *Castile v. Astrue,* 617 F.3d 923, 927 (7th Cir. 2010)). Accordingly, "as long as the ALJ finds at least one severe impairment, continues his analysis, and considers a Plaintiff's non-severe impairments at the later steps of his determination, a court need not remand a case to correct a step two error." *Id.* That the ALJ found impairments that Plaintiff does not appear to have and which were not advanced is of some concern, but it does not itself constitute reversible error here.

Nonetheless, the same is not true of the ALJ's failure to discuss the other impairments noted by Plaintiff. Such an error is harmful if the ALJ also failed to consider these impairments at subsequent steps. *See id.* ("[R]egardless of what evidence in the record may support her claims of additional severe impairments, the fact that some of Jacoby's impairments were not deemed to be severe at step two is of no legal consequence because the ALJ proceeded with the sequential analysis. Instead, the Court must focus on whether the ALJ properly considered the cumulative effect of all of Jacoby's impairments, whether severe or not, in subsequent steps of the analysis."). The ALJ's decision repeatedly references Plaintiff's pain and noted that she "suffers from chronic pain," so the Court cannot say that the ALJ impermissibly failed to consider Plaintiff's chronic pain syndrome. (*See* AR 19-22). However, as discussed further below, the ALJ made no reference in her decision to Plaintiff's migraines or headaches. (*See* AR 15-26). Nor did the ALJ seem to discuss Plaintiff's degenerative disease of the cervical spine and shoulder. (*See* AR 15-26). This was error. Accordingly, the Court recommends remand for proper consideration of Plaintiff's medically determinable impairments and the combined effects of these impairments, even if the ALJ finds that they would not be considered severe in isolation.

*2. Listing 14.09*

Plaintiff asserts that she suffers from significant curvature of the spine, and yet the ALJ

failed to give any consideration to Paragraph L of Listing 1.00 or Listing 14.09(C). (Pl.'s Br. 9-

10, ECF No. 16). "In considering whether a claimant's condition meets or equals a listed

impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of

the listing." *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). "A claimant may also satisfy

a Listing by showing that his impairment is accompanied by symptoms that are equal in severity

to those described in the Listing. 20 C.F.R. § 404.1526. A finding of medical equivalence requires

an expert's opinion on the issue." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Paragraph L of Listing 1.00, *Abnormal Curvatures of the Spine*, states:

> L. Abnormal curvatures of the spine. Abnormal curvatures of the spine
> (specifically, scoliosis, kyphosis and kyphoscoliosis) can result in impaired
> ambulation, but may also adversely affect functioning in body systems other than
> the musculoskeletal system. For example, an individual's ability to breathe may be
> affected; there may be cardiac difficulties (e.g., impaired myocardial function); or
> there may be disfigurement resulting in withdrawal or social isolation. When there
> is impaired ambulation, evaluation of equivalence may be made by reference to
> 14.09A. When the abnormal curvature of the spine results in symptoms related to
> fixation of the dorsolumbar or cervical spine, evaluation of equivalence may be
> made by reference to 14.09C. When there is respiratory or cardiac involvement or
> an associated mental disorder, evaluation may be made under 3.00ff, 4.00ff, or
> 12.00ff, as appropriate. Other consequences should be evaluated according to the
> listing for the affected body system.

20 C.F.R. § 404, Subpt. P, App. 1, § 1.00. Listing 14.09(C), in turn, states:

> C. Ankylosing spondylitis or other spondyloarthropathies, with:
>
> 1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by
> appropriate medically acceptable imaging and measured on physical examination
> at 45° or more of flexion from the vertical position (zero degrees); or
>
> 2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by
> appropriate medically acceptable imaging and measured on physical examination
> at 30° or more of flexion (but less than 45°) measured from the vertical position
> (zero degrees), and involvement of two or more organs/body systems with one of
> the organs/body systems involved to at least a moderate level of severity.

20 C.F.R. § 404, Subt. P, App. 1, § 14.09.

Plaintiff recounts the following medical records regarding the curvature of her spine: x-rays taken in 2014 showed "37 degrees of levoscoliosis of the lumbar spine measured from the bottom of T12 through the top of L5 with apex of the curve at L3" (AR 277); a February 17, 2015 MRI of the lumbar spine confirmed "approximately 36 degrees" of levoscoliosis measured from the superior endplate of L2 and the inferior endplate of L5, and further showed degenerative disc disease changes primarily on the right side of the lumbar spine secondary to the scoliosis with moderate disk space loss present from T12 to L5 (AR 273); an examination noted Plaintiff had "protruding of her right thoracic area" and "some limitations to range of motion of her back," while forward flexion of the lumbar spine was 70 of 90 degrees, and lateral flexion was 20 of 25 degrees on the right and 25 of 25 degrees on the left (AR 294, 296); and her primary care physician opined that Plaintiff "has chronic pain that is severe in nature from her scoliosis" and an exam revealed that "she has almost no range of motion of her back" (AR 299, 362). (Pl.'s Br. 9, ECF No. 16).

Plaintiff asserts that not only did the ALJ fail to consider Paragraph L of Listing 1.00 or Listing 14.09(C) entirely, but the ALJ also failed to assess the requirements of the relevant listings or analyze the evidence when she concluded there was no medical equivalence. *Id.* at 10. Moreover, Plaintiff argues that the ALJ should have requested the opinion of a medical expert on the issue of medical equivalence. *Id.* at 11. Plaintiff concludes that remand is necessary for proper consideration of her claim in light of all applicable listings. *Id.* at 12.

In response, the Commissioner argues that Plaintiff has failed to demonstrate that she equaled a listing and points to several medical records in support. (Def.'s Mem. 9-10, ECF No. 17). The Commissioner states that the 2014 x-rays of Plaintiff's lumbar spine reflected "no evidence for spondylolisthesis or spondylosis" and "lateral flexion-extension views show[ed] no gross

instability." *Id.* (quoting AR 277). Further, while Plaintiff's February 2015 MRI indicated levoscoliosis of the lumbar spine of approximately 36 degrees measured from the superior endplate of L2 and the inferior endplate of L5, along with degenerative disk disease, the MRI nonetheless showed no evidence of central canal stenosis, specific disk herniation, nerve impingement, or neural foraminal stenosis. *Id.* at 10 (quoting AR 273). Accordingly, the Commissioner asserts that Plaintiff has not met her burden of establishing that she medically equaled Listing 14.09. *Id.*

Plaintiff persuasively argues that the ALJ should have considered whether Plaintiff's scoliosis equivalently met Listing 14.09(C). Here, regarding Plaintiff's scoliosis, the ALJ concluded as follows:

> The claimant's disorder of the back fails to meet or medically equal section 1.04 of the Appendix 1 impairments. The record evidence fails to demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising in both the sitting and supine positions (1.04A.). Furthermore, the record evidence fails to establish spinal arachnoiditis (1.04B) or lumbar spinal stenosis with pseudoclaudication (1.04C). Accordingly, I find that the claimant's disorder of the back fails to meet listing level severity.

(AR 18). This is insufficient. True, an "ALJ is not required to mention every piece of evidence in the record." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006). Nonetheless, the "failure . . . to evaluate any of the evidence that potentially supported [a plaintiff's] claim does not provide much assurance that [the ALJ] adequately considered [the plaintiff's] case." *Id.* (remanding on this ground for a more thorough analysis of the evidence at step 3); *see Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (criticizing ALJ's failure to discuss conflicting evidence at step 3, including the strongest piece of evidence supporting the plaintiff's case). The ALJ's failure to discuss any evidence supporting Plaintiff's claim that a listing was met was error.

Moreover, "[i]t is the job of the ALJ, not the reviewing court, to weigh conflicting evidence." *Steinbeck v. Berryhill*, No. 17-C-1760, 2019 WL 276368, at *2 (E.D. Wis. Jan. 18,

2019). The Court therefore recommends remand on the issue of whether Listing 14.09 is equivalently met, and for the consideration of any medical opinions necessary to address that issue. *See* SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017) ("To assist in evaluating this issue [of whether an impairment meets or medically equals a listing] adjudicators at the hearings level may ask for and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and severity of the impairment(s)."). This is not to say that a finding of equivalence is required on remand. Among other issues, Plaintiff may be unable to demonstrate the equivalence of certain necessary listing criteria. *See* 20 C.F.R. § 404.1526(b) (explaining how "we determine medical equivalence"). The Court observes only that the ALJ's failure to address the equivalence of Listing 14.09 does not allow for "meaningful judicial review" of her conclusions. *See Brindisi ex rel. Brindisi*, 315 F.3d at 786; *Zatz v. Astrue*, 346 Fed. App'x 107, 110 (7th Cir. 2009) (a perfunctory listing analysis provides "little basis for meaningful judicial review").

*3. Residual Functional Capacity*

Plaintiff alleges that the RFC fails to account for all of her limitations. Specifically, Plaintiff explains that the RFC fails to include any limitation related to her migraines and that the RFC is equally silent as to her reaching and manipulative limitations, along with her need to change positions due to pain and inability to persist at tasks. (Pl.'s Br. 14, ECF No. 16). Plaintiff further argues that the RFC is flawed due to the ALJ's failure to consider Plaintiff's chronic pain syndrome, headaches, classic migraines, and degenerative disease of the cervical spine and shoulder. *Id.* at 5, 8. Though silent on most of the specific impairments noted by Plaintiff, the Commissioner nonetheless argues that the ALJ properly considered the record in its entirety when crafting the RFC. (Def.'s Mem. 10-14, ECF No. 17).

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996).; *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

The Court finds that the ALJ erred in crafting Plaintiff's RFC, and therefore recommends remand on this ground. As explained earlier, the ALJ's decision repeatedly references Plaintiff's

pain and noted that she "suffers from chronic pain," so the Court cannot say that the ALJ impermissibly failed to consider Plaintiff's chronic pain syndrome when constructing the RFC. (*See* AR 19-22). Nonetheless, there is no reference to Plaintiff's migraines or headaches anywhere in the ALJ's decision, despite numerous records confirming Plaintiff's diagnoses and noting treatment sought. (*See* AR 15-26, 232, 265, 270-71, 311, 342, 353, 376, 389, 402). Except for a note that an exam reflected "some degenerative sclerosis" and another exam revealed that her right shoulder was higher than her left, the same is true of Plaintiff's degenerative disease of the cervical spine and shoulder. (AR 21; *See* AR 15-26). This is despite both records and testimony documenting Plaintiff's degenerative spinal issues and problems with her shoulder. (*See* 44-45, 61, 88, 221, 273, 275, 300, 320, 322, 351, 382, 386, 395).

With no reference to Plaintiff's migraines or headaches and only passing reference to Plaintiff's degenerative disease of the cervical spine and shoulder anywhere in the ALJ's decision, the Court is unable to determine whether the ALJ gave any thought to these conditions whatsoever. (*See* AR 15-26). The absence of such references leaves the Court with no meaningful way in which to review the ALJ's decision and the RFC it contained, which compels a finding that the ALJ erred. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling."); *Terry*, 580 F.3d at 477 ("Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling."). The Court thus recommends remand for proper consideration of Plaintiff's migraines, headaches, and degenerative disease of the cervical spine and shoulder.

It is less clear whether the ALJ erred in failing to discuss Plaintiff's reaching and manipulative limitations and her need to change positions due to pain and inability to persist at tasks. Plaintiff cites to only two records indicating she has a reaching limitation, both of which are function reports filled out by Plaintiff and her mother. (Pl.'s Br. 6, ECF No. 16 (citing AR 205, 215)). As to her need to change positions, Plaintiff cites to no medical records supporting the existence of such a limitation, though she did testify that it is difficult for her to sit in one position for very long. (AR 38). Plaintiff further provides no citation to the record to support her need for a manipulative limitation, and the Court can find none.[5]

In her decision, the ALJ noted Plaintiff's allegation that she has difficulty reaching and sitting, but the ALJ further explained both that she did not find Plaintiff's allegations entirely credible and that she assigned little weight to statements in the report filled out by Plaintiff's mother. (AR 20, 22, 24). Accordingly, the Court cannot say that the ALJ impermissibly ignored in their entirety lines of evidence indicating that Plaintiff had limitations regarding manipulation, reaching, and changing positions. Nonetheless, because the Court recommends remand on other grounds, the Court reiterates its recommendation that, upon remand, proper consideration be given to all of Plaintiff's medically determinable impairments and the combined effects of these impairments, even if the ALJ finds that they would not be considered severe in isolation.

### B. Consideration of Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred by (1) improperly assessing the Paragraph B Criteria as to Plaintiff's mental impairments; and (2) failing to accommodate Plaintiff's mental limitations in

---

[5] Plaintiff's summary of her medical history, filed with her opening brief, notes records indicating Plaintiff reported sore hands and pain in her hands. (Pl.'s Br. Ex. A. 2, 3, ECF No. 16-1 (citing AR 312, 314, 316)). Nonetheless, these records provide no information regarding Plaintiff's manipulative abilities. And, in fact, Plaintiff did not mark "using hands" in her function report when prompted to mark which items in a list were affected by her illnesses, injuries, or conditions. (AR 205).

14

the RFC. Since remand is already recommended on other grounds, the Court need not delve too deeply into this area. However, it is worth stressing that the RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young*, 362 F.3d at 1000; 20 C.F.R. § 404.1545(a). In arriving at an RFC, the ALJ "must consider all allegations of physical **and mental** limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p at *5 (emphasis added). The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry*, 580 F.3d at 477; *see also Golembiewski*, 322 F.3d at 918.

The ALJ's opinion appears to lack a logical bridge between the evidence and the RFC regarding Plaintiff's mental limitations. *See Beardsley*, 758 F.3d at 837. The only limitation contained in the RFC related to Plaintiff's mental impairments is a restriction to "simple tasks." (AR 20). Nowhere in her decision does the ALJ endeavor to explain how this restriction accounts for all of Plaintiff's mental limitations, especially in light of the ALJ's finding that Plaintiff had a moderate limitation in understanding, remembering, or applying information. As explained by one court, "an ALJ may not rely on 'catch-all terms,' like 'simple, repetitive tasks,' without explaining how such restrictions account for the claimant's mental deficits." *Melissa M. v. Saul*, No. 19 CV 745, 2020 WL 207715, at *4 (N.D. Ill. Jan. 14, 2020) (citing *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).[6] Accordingly, upon remand, the Court recommends that proper consideration be given to Plaintiff's mental limitations.

---

[6] In *Crump*, the Seventh Circuit Court of Appeals discussed this issue in the context of a plaintiff's limitations in concentration, persistence, and pace. 932 F.3d at 570. Nonetheless, the Court can find no argument why this reasoning would not equally apply to a plaintiff's limitations in understanding, remembering, or applying information.

## C. Treating Physician

Plaintiff argues that the ALJ erred in assigning no weight to the opinion of Dr. David Rosentrater, Plaintiff's treating physician. (Pl.'s Br. 15-16, ECF No. 16). Again, with remand already recommended, the Court will only briefly touch upon this issue.

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. § 404.1527(c).[7] An ALJ gives a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If the ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ must provide "good reasons" in the decision for the weight given to a treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2); *see also Scott*, 647 F.3d at 739; SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).[8]

As noted above, the ALJ assigned no weight to the opinion of Dr. Rosentrater. (AR 23). The ALJ predicated this finding entirely on the basis that, though Dr. Rosentrater was a treating source familiar with Plaintiff's treatment, his statements that Plaintiff "probably is truly medically

---

[7] Medical opinions are weighed by considering the following factors: (1) whether there is an examining relationship; (2) whether there is a treatment relationship, and if so the length of the treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence and by explanations from the source; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

[8] Although SSR 96-2p was rescinded effective March 27, 2017, the new regulations only apply to claims filed on or after the January 18, 2017 effective date of the new regulations. The claims in this case were filed in 2016.

disabled" and likely unable "to be sustainably employed" were not medical opinions but, rather, administrative findings reserved for the Commissioner. (AR 23 (citing AR 300)). The ALJ explained that, as such, Dr. Rosentrater's opinion could not be assigned controlling weight. (AR 23). The ALJ further stated that Dr. Rosentrater's "objective findings are mild in nature and [do] not reconcile with a finding of disability." (AR 23).

While the ALJ is correct that Dr. Rosentrater's statements regarding whether Plaintiff is disabled and her ability to sustain employment are findings reserved for the Commissioner, the ALJ nonetheless failed to properly articulate why no weight whatsoever should be given to his opinion. The ALJ neither cited to the "mild" objective findings she found in Dr. Rosentrater's opinion nor offered any explanation as to how his opinion did not reconcile with a finding of disability.[9] As such, it appears that the ALJ failed to consider the necessary factors as explained in *Moss*. 555 F.3d at 561 (citing 20 C.F.R. § 404.1527(d)(2)). The Court thus recommends that, upon remand, proper consideration be given to the weight to be assigned to Dr. Rosentrater's opinion, pursuant to the relevant regulatory factors.

### D. Subjective Symptoms

Plaintiff argues that the ALJ erred in evaluating the statements made by both Plaintiff and her mother regarding Plaintiff's subjective symptoms. Because the Court recommends remand on other grounds, it will only briefly discuss this issue.

Plaintiff asserts that the ALJ erred (1) in determining that Plaintiff's subjective statements were not consistent with the objective medical evidence; and (2) by improperly rejecting the statement offered by Plaintiff's mother on the basis that she was not medically trained and because

---

[9] And, it seems worth noting, Dr. Rosentrater's statement that Plaintiff "has almost no range of motion of her back" is located in the objective findings that the ALJ deemed "mild in nature." (*See* AR 23, 299).

her statement was not consistent with the preponderance of the opinions and medical evidence. (Pl.'s Br. 30-35, ECF No. 16).

The Court finds that the ALJ erred in her consideration of whether Plaintiff has been prescribed a back brace and by improperly emphasizing and mischaracterizing the fact that Plaintiff has not been recommended surgery to alleviate her symptoms. The ALJ stated that Plaintiff had not been prescribed a back brace, but failed to note Plaintiff's testimony that one of her treating physicians—a spine specialist—had recommended she look into getting a certain type of brace, which Plaintiff explained she could not afford. (AR 22, 45, 59). Moreover, the ALJ stated that Plaintiff has not been recommended surgery, yet neglected to recount critical details regarding this issue from Plaintiff's testimony. (AR 22). At the hearing, when asked about her physical impairments, Plaintiff offered the following testimony:

> Q. Has any surgery been recommended?
>
> A. There is no surgery . . . option for what I have. With the rod they placed in my spine, I have a fusion, and they don't really want to touch the equipment. From my understanding it's too difficult of an operation trying to, I guess, override one rod to another. I would not -- I would have less -- he told me I would have less mobility than what I do now.

(AR 47). Plaintiff further testified to the following:

> Q. Okay. On a daily level, zero to ten, ten is excruciating pain, hospital type pain, what is the average pain in your spine where that Harrington is?
>
> A. Eight.
>
> Q. Okay. And my understanding is . . . the only option they could do would be to try and remove the Harrington rods, restraighten your spine, and replace the Harrington rods, correct?
>
> A. Correct.
>
> Q. Your doctors haven't suggested doing that, have they?
>
> A. No.

18

Q. Do you know why?

A. Because it would be too difficult.

Q. It's a major almost rebuilding you, correct?

A. Yeah, and I'm fused, so that --

Q. Right. So they actually --

A. That would never change.

Q. -- have to break things to get you straightened?

A. Yes.

(AR 57-58). It was improper for the ALJ to perfunctorily conclude that the lack of recommended surgery and back brace undercut Plaintiff's allegations regarding the severity of her symptoms without seemingly giving any consideration to Plaintiff's testimony on these issues. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (holding that ALJ must not draw inferences about plaintiff's condition from plaintiff's infrequent treatment or failure to follow treatment plan unless ALJ has explored plaintiff's explanations as to lack of medical care); SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017) (explaining "[w]e will not find an individual's symptoms inconsistent with the evidence in the record [based on a failure to follow prescribed treatment that might improve symptoms] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints" and noting that some factors to consider are an inability to afford treatment and the side effects of medication).

Further, the Court finds that the ALJ improperly emphasized Plaintiff's daily activities. The Seventh Circuit Court of Appeals has often warned against equating the performance of daily activities with the ability to perform full-time, competitive work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities

19

in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Moss*, 555 F.3d at 562; *Zurawski*, 245 F.3d at 887. Here, the ALJ noted that Plaintiff's "statements have indicated that she is able to grocery shop, drive, care for her child, do some chores around the house, read, and watch television for 4-5 hours per day." (AR 22). Yet, the ALJ made no mention of Plaintiff's store—or any store—without hurting, so she will usually have to cut the trip short and leave. (AR 49). Nor did the ALJ reference Plaintiff's testimony that she has difficulty driving at times because "[i]t's hard to sit in one position for very long," so she tries not to go very far. (AR 38). The ALJ also failed to include that, in Plaintiff's function report, she noted that household chores take her all day because of how often she has to stop. (AR 206). The ALJ failed to properly consider all of the available evidence and testimony regarding Plaintiff's daily activities, and thus improperly emphasized these daily activities as undercutting Plaintiff's allegations regarding her subjective symptoms.

Finally, the Court finds that the ALJ's decision is deficient with respect to the ALJ's explanation of her consideration of the statements offered by Plaintiff's mother. The ALJ explained that she assigned little weight to the statements of Plaintiff's mother contained in her third party function report because they were "simply not consistent with the preponderance of the opinions and medical evidence in this case." (AR 24). Yet, the ALJ offered no explanation for which allegations she found to be inconsistent with the record. This was error. *See Briscoe ex rel. Taylor*, 425 F.3d at 355 (holding that ALJ was required to give reasons based in the record for a decision to reject third party's statements).

Because the Court has recommended remand on other grounds, the Court notes that, upon remand, proper consideration should be given to Plaintiff's alleged symptoms and any potential limitations therein, as well as to the statements of Plaintiff's mother. If the ALJ again finds the statements of Plaintiff's mother inconsistent with the record, the ALJ must sufficiently articulate these inconsistencies.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **GRANT** the relief requested in Plaintiff's Brief in Support of Her Request for Review and Remand of the Commissioner of Social Security's Final Decision [DE 16] and **REVERSE** the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 27th day of July, 2020.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT